IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-734

Filed 15 July 2026

N.C. State Bar, No. 22DHC25

THE NORTH CAROLINA STATE BAR, Plaintiff,

v.

MARK T. CUMMINGS, Attorney, Defendant.

Appeal by defendant from order entered 28 March 2024 by the Disciplinary Hearing Commission of the North Carolina State Bar. Heard in the Court of Appeals 24 March 2026.

> *The North Carolina State Bar, by Deputy Counsel Kathryn H. Shields; Counsel Carmen H. Bannon; Senior Deputy Counsel Jennifer A. Porter; and Deputy Counsel Jessica M. Arnold, for plaintiff-appellee.*
>
> *Dowling PLLC, by Troy D. Shelton, for defendant-appellant.*

DILLON, Chief Judge.

Defendant Mark Cummings appeals from an Order of Discipline from the North Carolina State Bar Disciplinary Hearing Commission ("DHC") suspending his license to practice law for five years for violations of the North Carolina Rules of Professional Conduct (the "Rules"). Some of the alleged violations occurred while Defendant was serving as a district court judge while others occurred while he was engaging in the practice of law. Because we conclude the DHC erred in its Order with

respect to *some* of the violations it found, we affirm in part and vacate the Order and remand in part, for the DHC to reevaluate the appropriate discipline.

## I.    Background

Defendant is a licensed North Carolina attorney and former district court judge in Guilford County.  The State Bar filed a complaint against Defendant, alleging he violated our Rules in various ways in his capacity as either a judge or practicing attorney.

Following a seven-day hearing, the DHC entered the Order suspending Defendant's license to practice law for five years.  Defendant appealed.  We note the Order is currently stayed during the pendency of Defendant's appeal.

## II.    Standard of Review

Judicial review of attorney discipline cases is the "whole record test."  *N.C. State Bar v. Talford*, 356 N.C. 626, 632–34 (2003); *see also N.C. State Bar v. DuMont*, 304 N.C. 627, 642–43 (1982) (establishing the "whole record test" standard).  The whole record test "requires the reviewing court to determine if the DHC's findings of fact are supported by substantial evidence in view of the whole record, and whether such findings of fact support its conclusions of law[.]"  *Talford*, 356 N.C. at 632 (citation omitted).  The evidence is substantial when "a reasonable person might accept it as adequate backing for a conclusion."  *Id.* (citation omitted).

The whole record test requires this Court to consider "contradictory evidence or evidence from which conflicting inferences may be drawn."  *Id.* (citation omitted).

The DHC must have relied on "clear, cogent, and convincing" evidence to support its findings and conclusions. *Id.* (citation omitted and cleaned up). Overall, we must consider the former in determining whether the DHC maintained "a rational basis in the evidence." *Id.* at 632–33 (citation omitted).

## III. Analysis

The DHC essentially determined Defendant committed numerous Rules violations in connection with (1) the compensation of certain individuals working at his law firm, (2) a misrepresentation he made to the trial court while representing a criminal defendant, (3) an act of dishonesty while presiding over a child support hearing, and (4) the action of falsely claiming his place of residence when filing for judicial candidacy. Based on these acts, the DHC concluded Defendant committed one violation of Rules 3.3(a)(1) and 8.1(a) and three violations of Rule 8.2(b), which provides as follows:

> Rule 3.3(a)(1): A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.] N.C. R. Prof. Cond. 3.3(a)(1).

> Rule 8.1(a): [A] lawyer in connection with a . . . disciplinary matter, shall not . . . knowingly make a false statement of material fact[.] N.C. R. Prof. Cond. 8.1(a).

> Rule 8.2(b): A lawyer who is a candidate for judicial office shall comply with the applicable provisions of the Code of Judicial Conduct. N.C. R. Prof. Cond. 8.2(b).

The DHC concluded Defendant committed five violations of Rule 8.4(b), which

provides as follows:

> Rule 8.4(b): It is professional misconduct for a lawyer to . . . [1] commit a criminal act[,] [2] that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.] N.C. R. Prof. Cond. 8.4(b).

The DHC concluded Defendant committed ten violations of Rule 8.4(c) which provides as follows:

> Rule 8.4(c): It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation that reflects adversely on the lawyer's fitness as a lawyer[.] N.C. R. Prof. Cond. 8.4(c).

And the DHC concluded Defendant committed six violations of Rule 8.4(d), which provides as follows:

> Rule 8.4(d): It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." N.C. R. Prof. Cond. 8.4(d).

Defendant presents four arguments on appeal, which we address in turn.

### A. Failure to Provide 1099 Tax Forms

Defendant's first argument concerns the DHC's determination that he violated Rules 8.1(a), 8.4(b), and 8.4(c) in connection with his failure to furnish 1099s to three individuals who had worked in his law practice.

The evidence tended to show that while managing his own law firm in Guilford County, Defendant hired three individuals who worked at various times between 2014 and 2016. One individual provided paralegal services. Another individual was a licensed lawyer who performed research, prepared legal memoranda, and worked

on other matters.  A third individual performed office administrative services.

Defendant compensated the three individuals for the services performed.

1.  Rules 8.1(a) and 8.4(c)

The State Bar determined Defendant violated Rules 8.1(a) (false statement in connection with a disciplinary matter) and 8.4(c) (dishonest conduct) when he lied during a State Bar interview by claiming he did not compensate the paralegal and that the paralegal was neither an employee nor independent contractor of Defendant's law firm—when later evidence proved otherwise.  We affirm the DHC's determination that Defendant violated Rules 8.1(a) and 8.4(c).  Specifically, there was substantial evidence before the DHC which tended to show Defendant made a false statement in connection with this disciplinary matter and that he acted dishonestly with regard to the paralegal.

The evidence showed Defendant told a State Bar interviewer tasked with investigating Defendant that he did not provide compensation to the paralegal.  At the DHC hearing, however, the paralegal testified that she was compensated, authenticating paychecks from the law firm evidencing these payments, stating: "These are copies of paychecks that were provided to me for -- it looks like it's every week provided to me for work that I did *as a paralegal* working for [Defendant's] Legal Group."  (Emphasis added).  The paralegal also testified as to the types of paralegal services she performed for Defendant's law firm, including communicating with clients, preparing interrogatories, and completing requests for voluntary

discovery.

Further, we note there was substantial evidence Defendant did not meet his obligation of providing a 1099 to the paralegal indicating he had paid her more than $600.00 in certain years—where evidence showed he, in fact, did pay her more than $600.00. *See* 26 U.S.C. § 6041(a) (applies to independent contractors).[1] Thus, we agree with the State Bar that Defendant made a false statement in connection with this disciplinary matter.

### 2. Rule 8.4(b)

We conclude, however, that the DHC's findings do not support its conclusions that Defendant violated Rule 8.4(b) in connection with his failure of providing 1099s to the three individuals.

The DHC based its conclusion regarding a Rule 8.4(b) violation on its determination that Defendant had committed a criminal act in violation of 26 U.S.C. § 7203 by failing to submit 1099s to the IRS for the three individuals.

The comments to Rule 8.4(b) explain "it must be shown by clear, cogent, and convincing evidence that the lawyer committed a criminal act [and that] . . . [c]onviction of a crime is conclusive evidence that the lawyer committed a criminal

---

[1] This Court does not address the State Bar's argument that the three individuals at Defendant's law firm should be classified as employees. The State Bar's argument focuses on classifying the individuals as independent contractors through the legal obligation in 26 U.S.C. § 6041(a)—requiring anyone engaged in a business to file a 1099—*and* the adjoining civil penalty and criminal misdemeanor sanction in 26 U.S.C. § 7203 for failing to comply with Section 6041(a)'s obligation.

act[.]" N.C. R. Prof. Cond. 8.4(b), cmt. 3. But where a respondent has not been so convicted, a violation of Rule 8.4(b) may still be found where, for instance, "the offense of *willful failure* to file an income tax return." N.C. R. Prof. Cond. 8.4(b), cmt. 2 (emphasis added).

The DHC argues Defendant committed a criminal act under 26 U.S.C. § 7203 which is entitled "[w]illful failure to file return, supply information, or pay tax."[2] A violation of 26 U.S.C. § 7203 generally consists of the following elements: (1) the law required the defendant to file a tax return; (2) the defendant failed to file the tax return as required by law; and (3) the defendant acted willfully i.e., he knew the law required him to file a tax return and intentionally failed to file the return. 26 U.S.C. § 7203; *see also United States v. Bishop*, 412 U.S. 346, 360 (1973) (defining willfulness as a "voluntary intentional violation of a known legal duty"); N.C.G.S. § 105-236(a)(9) (defining "willfully" in the context of a tax offense as purposely committing an offense in violation of a known legal duty).

It is unclear from our review of case law whether a 1099 falls within 26 U.S.C. § 7203's purview. Relevant case law generally associates a violation of the statute with the failure to file *a tax* return, rather than an *information* return such as a 1099. The plain language of the statute, however, does state it covers the failure to "supply

---

[2] The DHC additionally relied on 26 U.S.C. § 7202, a provision similar to Section 7203; however, Section 7202 covers employees as opposed to independent contractors. *See* 26 U.S.C. § 7202. The DHC, however, seemed to abandon the employee theory under Section 7202 at the DHC hearing and in its brief.

any information," which may also implicate a failure to file or supply an information return such as a 1099. 26 U.S.C. § 7203. Indeed, a 1099 may be more appropriately characterized as "[a] supply [of] information" as opposed to "mak[ing] a return" because a 1099 is used "to report payments made during the tax year totaling or exceeding the reportable payment threshold amount to persons not treated as employees (for example, independent contractors) for services performed for [one's] trade or business." *Forms and associated taxes for independent contractors*, IRS (Apr. 3, 2026), https://www.irs.gov/businesses/small-businesses-self-employed/forms-and-associated-taxes-for-independent-contractors.

In any event, presuming 26 U.S.C. § 7203 applies to 1099s, the DHC was required to make specific findings as to those three elements of a 26 U.S.C. § 7203 "criminal act" violation, one of which is that Defendant acted *willfully*. Defendant argues the DHC did not find his failure to file the 1099s was willful and thus its discipline under Rule 8.4(b) for his failure is not supported by the findings. We agree.

Defendant points to our decision in *N.C. State Bar v. Key*, where we affirmed a determination by the DHC that a respondent did *not* violate Rule 8.4(b) because "the DHC did not find that [he] acted willfully." 294 N.C. App. 372, 410–11 (2024). *See* 26 U.S.C. § 7206 ("Any person who . . . *[w]illfully* makes and subscribes any return, statement, or other document . . . shall be guilty of a felony[.]") (emphasis added).

We agree with Defendant. In this case, as in *Key*, the DHC made no finding that Defendant acted willfully under 26 U.S.C. § 7203. Thus, the findings do not

support the DHC's conclusions Defendant violated Rule 8.4(b). Accordingly, the DHC erred in relying on its conclusion that Defendant violated Rule 8.4(b) in its decision to suspend Defendant's license for five years. We vacate this portion of the Order.

## B. Recording Device

Defendant next argues the DHC erred in determining he violated Rules 3.3(a)(1), 8.4(c), and 8.4(d) for making a false statement or misrepresentation to the judge presiding over a trial where he was representing a criminal defendant. We conclude the DHC erred in disciplining Defendant on this issue. Applying the whole record test, we conclude the evidence fails to show Defendant made a false statement or misrepresentation as found by the DHC.

The DHC found that Defendant made a misrepresentation to the judge presiding over a criminal trial to which Defendant was trial counsel when Defendant placed a recording device on counsel's table during the testimony of a state witness. The record indicates Defendant had previously interviewed the state witness in May 2021. Then, at trial in September 2021, Defendant placed a recording device on counsel's table during that state witness's trial testimony, perhaps to represent to the testifying witness that he had previously recorded the conversation with that state witness. It appears he did so to "motivate" the state witness not to testify contrary to what the witness had told him.

The record shows that during a criminal trial in September 2021, while the jury was out of the courtroom and the state's attorney was discussing the

admissibility of a witness's testimony, Defendant placed a recording device on counsel's table. Following this action, the judge asked Defendant what he was doing, to which Defendant responded, "Taking out what I may use, Your Honor[.]" The judge then continued discussing the admissibility of a witness's testimony with the state's attorney. Later, the judge again questioned Defendant regarding the device.

Defendant responded, stating in open court, "Well, for the record, I do think we have to put on the May 18th interview of [witness] because I did think it was more prudent since I didn't know her and she didn't know me to do it in a public place." Then, the judge, Defendant, and the state's attorney had a bench conference. It was later determined Defendant never had a recording of his interview with the witness.

Based on Defendant's action and two statements, the DHC disciplined Defendant under Rules 3.3(a)(1) (false statement to a tribunal), 8.4(c) (dishonest conduct), and 8.4(d) (conduct prejudicial to the administration of justice).

The parties here agree Defendant never made a statement in open court that he, in fact, had a recording of the witness's interview. Rather, the DHC argues Defendant's action and two statements amounted to a statement in open court indicating he had a recording. Based on *this* assumption, the DHC further assumed, for a Rule 3.3(a)(1) violation, Defendant's action was directed at the judge.

Regarding the Rule 3.3(a)(1) violation found by the DHC, the record lacks evidence supporting the DHC's underlying assumption that Defendant's action of taking out the recording device was directed towards the tribunal constituting a Rule

3.3(a)(1) violation. Instead, various exchanges between Defendant, the judge, and the state's attorney indicate Defendant's action may have been trial strategy directed towards the witness. For example:

> Judge: And you have a recording of the two of you all? Talking?
>
> [Defendant]: Your Honor, if you want to speak with myself and [the state's attorney] privately, I don't want to give out trial strategy in front of the witness when the witness is about to be questioned.

Similar exchanges of Defendant asking for a bench conference when asked about a recording occur throughout the record.

During the DHC hearing, the presiding judge at the September 2021 trial testified he could not recall what Defendant said or did not say regarding a recording during the bench conferences:

> *I don't remember* the entire conversation at the bench. *I think* had he said, 'Look, I don't have a recording; I'm just -- I think I would've been pretty upset about that, so I don't believe he said that . . . . *I don't know* what transpired at the bench.

(Emphases added).

Also, at the DHC hearing, the judge similarly equivocates on what he thought the device was on Defendant's counsel's table. At some points he states, "I took it to mean he had a recording" while other times he states, "Well at that point, *I'm not sure*, but I -- *my understanding* was . . ." or "I was left with *the impression* . . . ." (Emphases added).

- 11 -

In sum, we conclude the DHC erred in determining Defendant violated Rule 3.3(a)(1) because no statement was directed at the tribunal. Similarly, we conclude the DHC erred in determining Defendant violated Rules 8.4(c) and 8.4(d) because the record fails to support the DHC's conclusions Defendant engaged in dishonest conduct or conduct prejudicial to the administration of justice. Accordingly, we conclude the DHC erred by relying on its determination to the contrary in fashioning its discipline.

## C. Work Note

Defendant next challenges the DHC's jurisdiction to punish him for actions he took in his capacity as a district court judge. For the reasons below, we conclude the DHC has the authority to discipline current licensed lawyers for actions taken in a previous judicial capacity. We, therefore, affirm the DHC's findings and conclusions on this issue.

The record shows that, as a district court judge, Defendant presided over a child support hearing. At some point during the hearing, Defendant communicated with the defendant-father, "You had to get permission to come down here[ ]" to which the defendant-father responds stating, "I plead the Fifth. I plead the Fifth." Defendant states twice in response to the defendant-father's pleading of the Fifth "we can help you with that."

Defendant's help included instructing the courtroom clerk to create a work note addressed to the defendant-father's probation officer stating the defendant-father had been in North Carolina "court the last three days, yesterday, today and

tomorrow[ ]" in what appears to be an attempt to assist the defendant-father to evade the consequences of violating his probation (i.e., leaving the state of Virginia) by coming to North Carolina to see his child. The defendant-father was in the North Carolina court for only one day. At the DHC hearing, Defendant's previous courtroom clerk stated "it wasn't normal for me to get to write a work note for days that the party that I was writing the note for *wasn't in court*." (Emphasis added).

In October 2019, following Defendant's actions regarding the work note, our Judicial Standards Commission ("JSC") and Defendant entered into a consent order, agreeing Defendant would leave judicial office based on issues related to this work note and residency issues discussed below in subsection III.D.

Defendant argues the State Bar lacks the authority to discipline him for his alleged dishonest act regarding the work note where the JSC has already disciplined him for that same action, resulting in him resigning from his judgeship.

There is some overlap between attorneys and judges as one may not hold a state judicial office unless he is licensed by the State Bar to practice law in North Carolina. Indeed, the State Bar possesses "the authority to regulate the professional conduct of licensed lawyers" and such regulation includes disciplinary actions for violations of the Rules. N.C.G.S. § 84-23(a); *see also id.* § 84-28(a). And only active members of the State Bar may practice law in North Carolina. *Id.* § 84-4. Further, only those "duly authorized to practice law in the courts of this State shall be eligible" to serve as a state court judge. N.C. Const. art. IV, § 22.

A seminal case on the State Bar's authority over judicial misconduct is *N.C. State Bar v. Tillett*, 369 N.C. 264 (2016). There, our Supreme Court held sole authority rests with the JSC or our Supreme Court to discipline a *sitting judge* of our General Court of Justice. *Id.* at 276. The JSC, however, has no authority concerning a judge's license to practice law.

In reaching its conclusion in *Tillett*, our Supreme Court noted (and refused to disavow) an unpublished opinion from our Court holding the DHC *may* discipline a *former* judge (currently licensed lawyer) for previous actions taken on the bench. *See id.* (citing *N.C. State Bar v. Badgett*, 212 N.C. App. 420, 713 S.E.2d 791, 2011 WL 2226426, \*13 (2011) (unpublished) ("In *Badgett III* the DHC disbarred the defendant once he was *removed from judicial office*; however, while a judge remains in office, only this Court or the JSC may impose discipline for his or her conduct as a judge." (emphasis added))).

We conclude the fact that another disciplinary board—in this case the JSC—took action against Defendant for a dishonest act does not prevent the State Bar from taking disciplinary action concerning Defendant's license issued by the State Bar to practice law, where it properly determines the dishonest act is one "that reflects adversely on the lawyer's fitness as a lawyer." N.C. R. Prof. Cond. Rule 8.4(c). Indeed, consider if Defendant possessed a real estate broker's license and the Real Estate Commission revoked his broker's license the Commission had issued him for acts of dishonesty in his dealings with the public as a broker. In such case, the State Bar

could still take action on Defendant's law license based on those same acts, where those acts are shown to reflect "adversely on [his] fitness as a lawyer." *Id.*

### D. Residency

The final issue is whether the DHC erred by disciplining Defendant for alleged misrepresentations he made on his judicial notice of candidacy form, his voter registration, and when updating his driver's license address. Essentially, the DHC found Defendant deliberately lied about his place of residency so that he could run for a particular judicial seat. Here, we conclude the DHC erred because its findings were not supported by competent evidence in that the DHC impermissibly relied on non-competent hearsay.

Evidence tended to show on 26 June 2018, Defendant went to the Guilford County Board of Elections ("BOE") to obtain certification to file as a superior court candidate in District 18A. When Defendant provided the BOE with the address of his marital home, the BOE informed Defendant his marital address was not in District 18A; thus, Defendant could not run for the superior court seat. *See* N.C. Const. art. IV, § 9(1) (running for a superior court judgeship requires the candidate to live in the judicial district in which he is elected).

The next day, Defendant returned to the BOE and provided BOE officials with a month-to-month lease of an apartment with an address within District 18A. The apartment lease was dated 30 May 2018 with a start date of 1 June 2018.

The BOE informed Defendant he would have to update his voter registration

to the District 18A address and Defendant did so on June 28. On the same day, Defendant submitted his notice of judicial candidacy form with the BOE representing the District 18A address. Seven days later on July 2, Defendant updated his driver's license to the District 18A address. The BOE director later certified Defendant to run for District 18A superior court judge.

In his opening statement at the DHC hearing, Defendant alleged he and his now ex-wife were experiencing marital issues before Defendant decided to run for a superior court judgeship, and at some point, Defendant moved out of the marital home. The District 18A apartment landlord was in the process of furnishing the apartment for Airbnb, so the apartment contained some furnishings appropriate for a living environment. Defendant and the landlord testified to Defendant living at the apartment for about three months, from 1 June 2018 to September 2018.

The DHC found Defendant misrepresented his residency while serving as a district court judge and running for a superior court judgeship in Guilford County. The DHC concluded Defendant's late June and early July misrepresentations on his voter registration, driver's license, and judicial candidacy form, amounted to violations of Rules 8.4(b) (dishonest criminal acts), 8.4(c) (dishonest conduct), 8.4(d) (conduct prejudicial to the administration of justice), and 8.2(b) (compliance with the Code of Judicial Conduct).

The core issue here is determining the date Defendant moved out of the marital home and thus, whether Defendant's representations on the three forms indicating

he lived at the District 18A apartment were truthful. The DHC's findings as to Defendant's move relied on a State Bar investigator's testimony who alleged Defendant's ex-wife previously told him Defendant moved out of the marital home around 10 July 2018, after he returned from a trip to the Dominican Republic. If Defendant did not move out of the marital home until July 10, then his prior filings on June 27–28 and July 2 reflecting a District 18A address would have been untrue.

To admit the State Bar investigator's testimony at the DHC hearing regarding what date Defendant's ex-wife previously told him, the DHC turned to the two residual exceptions for hearsay: Rule 804(b)(5) and Rule 803(24). Defendant objected to the State Bar investigator's testimony.[3]

Our Rules of Evidence apply in "any hearing" before the DHC. *See* Proceedings Before the Disciplinary Hearing Commission: General Rules Applicable to All Proceedings, 27 N.C. Admin. Code 1B.0114(g) (2026). The first step in our Rule of Evidence 804(b)(5) analysis is determining whether a witness is "unavailable." *State v. Triplett*, 316 N.C. 1, 8 (1986) (citation omitted). A "lack of memory of the subject matter" can be unavailability. N.C.G.S. § 8C-1, Rule 804(a)(3).

The leading case on Rule 804(b)(5)'s use is *State v. Miller*, 330 N.C. 56 (1991), which Defendant raised at the DHC hearing. In *Miller*, two allegedly unavailable witnesses testified to remembering: "the incident in question . . . most of what they

---

[3] Because we previously addressed the DHC's ability to discipline a licensed lawyer for actions taken in an individual's *former* judicial capacity, this analysis proceeds absent such discussion.

saw and had not had a complete failure of memory about the events . . . [but] they did not remember every single detail of the incident." *Id.* at 61. The trial court determined the witnesses were unavailable pursuant to Rule 804(b)(5). *Id.* Our Supreme Court overruled the trial court, relying on a United States Court of Appeals for the Fifth Circuit decision reasoning partial unavailability or "lack of memory of the details is not sufficient to make the [hearsay] testimony admissible." *Id.* at 62 (quoting *N. Miss. Commc'n, Inc. v. Jones*, 792 F.2d 1330, 1336 (5th Cir. 1986)).

At the DHC hearing, Defendant's ex-wife testified to remembering (1) a discussion with Defendant on his decision to run for superior court judgeship but not whether she favored this decision; (2) Defendant removing clothes from the martial home and going to the Dominican Republic during the springtime; and specifically that (3) "[Defendant] wasn't living [at the marital home following the Dominican Republic trip]. He was in and out, back and forth, picking the [children] up, dropping them off or when I had like a work event, he had to have them. That's what he was [at the marital home] for." Additionally, Defendant's ex-wife remembered discussing with Defendant him running for a superior court judgeship and when he ran for the position—both times he was moved out of the marital home.

The State Bar investigator testified Defendant moved out of the marital home on 10 July 2018. The ex-wife, however, recalled a less specific date:

> [Deputy Counsel]   So the time when you and [Defendant]
> talked about needing some time apart and he started
> removing some clothes, in that time frame did he take a

trip to the Dominican Republic?

[Defendant's ex-wife]        Yes. *I don't know when that time frame was*, so yeah.

[Deputy Counsel]    You may have already gotten there, but did [Defendant] begin removing some clothes in the [the marital home]before or after his trip to the Dominican Republic?

[Defendant's ex-wife]        Well, I honestly *don't remember* when the trip was. That's the thing. I *don't remember* when that trip was.

[Deputy Counsel]    Do you remember if he was still living at [the marital home] when he left for that trip?

[Defendant's ex-wife]        I just remember that I asked him to leave, and it was like, you know, *almost like springtime* because the flowers on the tree outside our house had bloomed. So I just remember it was like maybe April, March, April, around that time.[4]

(Emphases added).    While the ex-wife's testimony may constitute partial unavailability, her failure to remember the exact date of Defendant moving out of the marital home, among other specific details, is not sufficient to render her unavailable under Rule 804(b)(5).    This conclusion is bolstered when considering she *did remember* the specific season Defendant moved out (spring), while the State Bar investigator's testimony contradicted the ex-wife, alleging Defendant moved out in the summer (July).

---

[4] The State Bar attempted to refresh Defendant's ex-wife's memory using the State Bar investigator's notes from the two phone conversations he had with the ex-wife. Defendant's ex-wife, however, stated she did not remember stating to the State Bar investigator when "[Defendant] moved out[.]"

As noted, Defendant's ex-wife was physically present at the DHC hearing and testified concerning the subject matter of the hearsay statements. Without the State Bar investigator testifying to a specific date the ex-wife allegedly told him in a previous conversation, the DHC lacked substantial evidence to support its findings and conclusion that Defendant misrepresented his residency on the three forms. Thus, the DHC erred in admitting the State Bar investigator's testimony who relied on previous conversations with the ex-wife because it failed to meet the threshold requirement to show she was unavailable under Rule 804(b)(5). The DHC alternatively found the residual exception of Rule 803(24) to apply to the State Bar investigator's testimony. Our Supreme Court, however, has stated the availability of a witness for both residual hearsay exceptions is fundamental:

> Although the availability of a witness is deemed immaterial for purposes of Rule 803(24), that factor enters into the analysis of admissibility under subsection (B) of that Rule which requires that the proffered statement be 'more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts.' *If the witness is available to testify at trial*, the 'necessity' of admitting his or her statements through the testimony of a 'hearsay' witness very often is greatly diminished if not obviated altogether.

*State v. Fearing*, 315 N.C. 167, 171–72 (1985) (emphasis added) (citing *State v. Smith*, 315 N.C. 76 (1985)). Because the ex-wife was available for purposes of Rule 804(b)(5), her availability "obviate[s]" the necessity of the State Bar investigator's testimony at the DHC hearing. Thus, the DHC erred in admitting her testimony under Rule

803(24).

Because neither of the residual hearsay exceptions apply permitting the State Bar investigator's statement to come into evidence, the record lacks competent evidence supporting the DHC findings and conclusion that Defendant misrepresented his residence on his judicial candidacy form, driver's license form, and voter registration. Thus, we vacate the Order as to Defendant's violations of Rules 8.4(b), 8.4(c), and 8.4(d) for this issue.

The DHC also disciplined Defendant under Rule 8.2(b) for the alleged residency misrepresentation. The DHC's finding and conclusion on this discipline relied on the same hearsay evidence. Here, the DHC found Defendant violated Canon 7, subsection (c) of the North Carolina Code of Judicial Conduct which states: "[a] judge or a candidate should not: . . . (3) intentionally and knowingly misrepresent his/her identity or qualifications." Code Jud. Conduct, Canon 7(c)(3) (2020). The DHC's finding requires evidence to support that there was a misrepresentation of Defendant's qualification to be a superior court judge, namely, that he lives in the judicial district where that position sits. As discussed above, the record lacks competent evidence to support this alleged misrepresentation by Defendant. Thus, the Order's discipline under Rule 8.2(b) is vacated.

## IV.    Conclusion

We conclude the DHC erred in its determination that Defendant violated the Rules based on (1) a willful violation of federal law regarding the supplying of 1099s

(as the DHC made no finding that Defendant acted willfully); (2) his actions during the September 2021 trial regarding the alleged recording he had made of a witness (as there was no evidence at the hearing to support a finding that he had made any misrepresentation to the trial court); and (3) any misrepresentation regarding his residency when he filed to run for a judicial seat (as the DHC's evidence was based on inadmissible hearsay).

We, otherwise, conclude that the DHC did not err regarding its other findings and conclusions. Accordingly, we vacate the Order and remand with instructions to reconsider appropriate discipline based on the Rules violations sustained in this opinion.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

Judges COLLINS and WOOD concur.